168 | 121
32 SC | 290

## John McConaghy *v.* Pemberton & Co., Appellants.

*Contract—Mutual covenants—Damages—Speculative damages.*

Plaintiff and defendants entered into a written agreement containing mutual covenants by which defendants were to convey to plaintiff twenty-four lots, "clear of incumbrances; taxes and water rents to be apportioned; sewer, gas, water, curb and street pavement to be put in " by defendants; and plaintiff was to convey to defendants a number of properties, and to build houses on the lots conveyed to him by defendants "within one year." Defendants failed to put in the curb and street pavement. The city did the work, and filed liens against the properties which plaintiff was compelled to pay. Plaintiff did not begin the construction of houses until after the street improvements were put in, and until more than a year after the execution of the contract. In an action to recover the amount of the municipal liens paid by plaintiff, *held*, that he was entitled to recover, (1) because he was not bound to build the houses before the curbing and paving were done; (2) because the damage, if any, suffered by defendants from plaintiff's failure to build the houses within a year were not the subject of set-off for the reason that they were speculative, and not in contemplation of the parties when the contract was made, and not such as arose naturally from the breach.

Argued April 12, 1895. Appeal, No. 271, Jan. T., 1895, by defendant, from judgment of C. P. No. 3, Phila. Co., March T.,

1892, No. 318, for plaintiff on report of referee. Before Green, Williams, McCollum, Dean and Fell, JJ.   Affirmed.

Assumpsit to recover damages for breach of a written agreement.

The agreement upon which suit was brought was as follows:

" This agreement, made the fourth day of August, A. D. one thousand eight hundred and ninety, between Pemberton & Co., of the first part, and John McConaghy, of the second part:

" Witnesseth, that the said parties of the first part, for the consideration hereinafter mentioned, do hereby for themselves, their heirs, executors, and administrators, covenant, promise, and agree with the said party of the second part, his heirs and assigns, that they the said parties of the first part shall and will, on or before September 1st, 1890, at the proper cost and charges of the said John McConaghy, his heirs and assigns, by a good and sufficient deed of conveyance, grant, convey, and assure unto the said party of the second part, his heirs and assigns, all those twenty-four lots on the south side of Clifford street, between Thirty-first and Thirty-second streets, in the Twenty-ninth ward, the total front being three hundred and ninety-five feet, and the depth ninety feet to Hollingsworth street.   Subject to building restrictions, clear of incumbrances, taxes and water-rents to be apportioned; sewer, gas, water, curb, and street pavement to be put in by the parties of the first part front and rear and side streets, *together* with all and singular the buildings and other improvements and appurtenances thereunto belonging. And the said party of the second part, for himself, his heirs, executors, and administrators, does hereby covenant, promise, and agree with the said parties of the first part, their heirs and assigns, that he, the said party of the second part, shall and will well and truly convey unto the said parties of the first part, their heirs and assigns, the following properties: 1933 Federal street, 1109 to 1119 South Twenty-sixth street inclusive, 2501 to 2517 Ellsworth street inclusive, 2516 to 2530 Alter street, 2534 to 2538 Alter street, 2533 to 2539 Alter street, 2543 Alter street, subject in all to twenty-nine thousand four hundred dollars, otherwise clear of incumbrances, taxes, water-rents, and interest on ground-rents, to be apportioned, leases to be assigned, settlement to be as of September 1st, 1890,

houses to be built on Clifford street lots by party of the second part within one year."

The case was referred to Charles B. McMichael, Esq., as referee, who reported as follows:

" The controversy in this case arose out of a sale or exchange of real estate between the plaintiff and the defendant's firm. The agreement in reference to this was reduced to writing, and this memorandum of agreement in writing was dated the fourth day of August, 1890.   Amongst other things, it set forth that the street pavement was to be put in by the parties of the first part on front and rear and side streets ; and also an agreement on behalf of John McConaghy that houses were to be built on Clifford street by the party of the second part within one year.   Some of the street improvements, such as water pipes and sewers, were put in by Pemberton & Co.; but the paving bills, which was the most expensive part of the street improvements, were not paid by Pemberton & Co; a lien was filed against the property, which had been acquired by Mr. McConaghy, and he was obliged to pay the bills.   For the amount of these bills he brought suit against Pemberton & Co., and filed a statement, in which he alleged as follows : ' Plaintiff sues the defendants to recover money paid out and expended to their use under the following circumstances: Plaintiff bought from the defendants in the autumn of 1890, 24 lots of ground on the south side of Clifford street, in the Twenty-ninth ward of the city of Philadelphia, between Thirty-first and Thirty-second streets, having a frontage of 395 feet on Clifford street and extending in depth 90 feet to Hollingsworth street, the defendants agreeing to pay for the sewer, gas, water, curb and street pavement on all the aforementioned streets.   Subsequently the said Clifford street was paved and curbed in front of the said lots, and the defendants refused and neglected to pay for the said curbing and paving as agreed; whereupon liens were filed against the said lots for the money due for the said curbing and paving, and the plaintiff was thus compelled to pay for the same, and did so pay.   He now claims to recover from the defendants the sum of $4,375.98, being the amount paid by him for said paving and curbing, together with interest from Feb. 25, 1892.   Plaintiff avers that he has never been paid this sum or any part of it, and that it is all justly due and payable.'

" To this the defendants pleaded and gave notice of special matter as follows : ' And now, March 31st, 1892, defendants by Elias P. Smithers, their attorney, plead " non assumpsit, " " set-off."

" ' NOTICE OF SPECIAL MATTER.

" ' To Messrs. Lewis and Landreth, attorneys for plaintiff.

" ' SIRS :—Please take notice that under the plea filed in the above case the defendants will offer to prove as special matter:

" ' That the defendants, being the owners of about twenty-four acres of land in the Twenty-ninth and Thirty-second wards of the city of Philadelphia, and being desirous of improving the same by the erection of houses thereon and thereby increasing its value, at the time mentioned in the statement in consideration and upon the express condition that the plaintiff, for the purpose of aiding them in improving their said ground as aforesaid, should and would within one year from the date of the sale erect on each of the said twenty-four lots to be sold to him a substantial three-story brick dwelling-house, did sell to plaintiff part of said twenty-four acres, to wit, the said twenty-four lots mentioned in the statement, at a fair price and clear of all incumbrances then existing, and did agree to take in payment therefor thirty-two houses and lots on Federal, South Twenty-sixth, Ellsworth, and Alter streets in the twenty-sixth ward of the city of Philadelphia, at a price above their cash value, and subject to incumbrances amounting to $29,400, and for the consideration and upon the express condition aforesaid, to wit, that the plaintiff would within one year from the time of said sale erect on each of said lots so sold to him, a substantial three-story brick dwelling-house, for the purpose of aiding defendants in developing their said land, the defendants as one of the terms of said sale did agree that they would pay for the sewer, gas, water, curb and street pavement when the same should be done on the streets on which the lots sold to plaintiff fronted.

" ' That the said plaintiff did not within one year from the date of said agreement, and hath not since, erected a substantial three-story brick dwelling-house or any other building on said twenty-four lots, or on either or any of them, and hath not otherwise improved the same, and that the said defendants have expended large sums of money in improving their remaining part of their said twenty-four acres on the faith of said

agreement with plaintiff, and did pay for certain of said street improvements, which were done within one year from the date of said agreement, divers sums of money amounting to $797.27 for water-pipe and sewers. That by reason of the failure of said plaintiff as aforesaid to keep and perform the said condition and stipulations of said agreement of sale which were to be kept and performed by him that defendants have suffered damages as follows, to wit : In the sum of $797.27, paid for water-pipe and sewer in front of said property so sold to plaintiff, in the sum of $4,300, paid by them to carry the remaining property which they were unable to sell by reason of plaintiff not having kept his agreement as aforesaid, in the sum of $3,000 for injury to market value of their remaining property caused by plaintiff not having built on the lots sold him as aforesaid, and in the sum of $5,750 in the excessive value paid for said property conveyed to them by plaintiff as an inducement to said agreement with plaintiff, making total damages suffered by defendants by the failure of plaintiff to perform his part of said agreement the sum of $13,847.27. Which sum defendants intend to defalk against the plaintiff's demand in the suit.

" ' Total amount of damages to defendants . $13,847 27
" ' Amount sued for by plaintiff . . . 4,374 98

" ' Amount due defendants . $9,471 29

" ' Said defendants will demand upon the trial of said cause a verdict and a certificate against the plaintiff for said sum as justly and legally due the said defendants according to the statute in such case made and provided. Very respectfully yours, (Signed) ELIAS P. SMITHERS, Attorney for Defendant.'

" Issue was joined and the case was referred to Charles B. McMichael by agreement of the parties.

" The plaintiff, who was first called to the stand, testified that he bought from the defendants, in the autumn of 1890, twenty-four lots of ground on Clifford street, in pursuance of an agreement, and this agreement was in writing and was offered in evidence and a copy of it is annexed to this report, marked ' C. B. M., Exhibit No. 1, May 13, 1892.' He further testified that street improvements were, at the time he testified, made, but that the defendants had not paid for them. Pro-

ceedings had been instituted against him, and a lien entered by the parties who made the improvements; and that he subsequently paid the amount and took a receipt for the same, which receipt was offered in evidence and marked 'Exhibit C. B. M., No. 2, May 13, 1892,' the amount paid being $4,375.98.

" Mr. Landreth, on behalf of the plaintiff, also put in evidence a deed of Clifford Pemberton, Jr., et al., to John McConaghy, for twenty-four lots of ground, Twenty-ninth ward, Philadelphia, dated Sept. 20, 1890, and recorded in Deed Book G. G. P., No. 682, page 252, marked 'C. B. M., Exhibit No. 3, May 13, 1892.'

" The plaintiff was cross-examined at considerable length, and more particularly upon the point that his attention had been called, prior to the agreement in writing, to the covenant which was afterwards put into the agreement, that houses should be built within one year; and his attention was called also to a letter dated March 14, 1892, inquiring of him when he expected to begin the erection of the twenty-four houses, and stating that the agreement of Pemberton & Co. to put in street improvements depended upon plaintiff's building within a year. The plaintiff did not, however, recollect distinctly the conversations to which his attention was called; nor did he recollect receiving the letter referred to. He was also asked why he did not build houses as he agreed to do, and he gave two reasons; (1) that he thought there were too many houses in the neighborhood, and (2) that as he had paid fully in the trade for the street improvements, he was not bound to build the houses until the street improvements were in, and that he thought it just that the street improvements, as long as he paid for them, ought to be done first. He also testified that the building of houses could not go on while street improvements were being made.

" Plaintiff here rested his case, and, in the opinion of the referee, he made out a prima facie case which entitled him to be reimbursed for the outlay upon street improvements he had made.

" A very large amount of testimony, covering a great many pages and taking up a great deal of time, was taken on behalf of the defendants, to a large amount of which objection was

made and exceptions noted ; and the referee admitted most of the testimony offered, thinking it proper that, as his opinion and decision was to be reviewed by the court, testimony, about which there might be grave doubt as to the propriety of its admission, should be taken, subject to such objection and exception that his errors might be corrected by the appellate court. There were two lines of testimony, however, upon which the referee decided adversely to the defendants' right to take the testimony. First, the defendants offered to show that the properties which Mr. McConaghy had exchanged for the unimproved lots of Messrs. Pemberton & Co., under the agreement of Aug. 4, 1890, were not worth the values placed upon them by McConaghy, and a large amount of the claim of set-off was based upon the theory that the defendants had a right to show that the properties which they had taken in barter or exchange for their own land were not worth what they thought they were when they took them. As there was no pretense of any fraud or imposition upon the part of the defendants, as they were, according to their own testimony, experts in the real estate business; had been engaged for a considerable period of time in large operations; were sui juris, and abundantly competent to look after their own interests; and as the agreement, so far as the exchange of land for houses was concerned, was fully executed before any dispute arose between the parties ; and as no complaint had ever been made of any unfairness in the dealings in this regard, the referee felt bound to reject, when objection was seriously made to it, all testimony tending to show that the properties traded by Mr. McConaghy for land of Messrs. Pemberton & Co. were worth less than both parties seem to have thought them worth at the time of the trade. Second, a large number of experts were called on behalf of the defendants, and while the referee admitted their testimony generally upon the questions of improvement to a neighborhood by the building of houses, yet he excluded their opinions as to the amount of damage suffered by the defendants in this particular case.

" The testimony of Mr. Clifford Pemberton, Jr., was to the effect that he was a member of the firm of Pemberton & Co., and that he had made an agreement of exchange with Mr. McConaghy on Aug. 4, 1890 ; that Mr. McConaghy had not

complied with the clause of that agreement that he was to build houses on the lots within a year. Mr. Pemberton also testified at considerable length as to the tract of ground which he and his partners were improving and developing, and that, in his view, the balance of his property was damaged by the failure of Mr. McConaghy to build houses within a year; that, in his opinion, the cost of carrying a certain number of houses should be charged to Mr. McConaghy for his failure to build houses according to his agreement. On page 49 of the type-written notes of testimony, he says: 'The cost of carrying property, including houses and lots unsold on account of Mr. McConaghy's failure to build, was seven houses at $400, making $2,800, and twenty-six lots, twelve on Clifford street and fourteen on Thirty-first street, with interest, $1,500, making a total of $4,300. Then, general damage to the value of the balance of our houses and lots, $3,000.' And he says further, in explanation, that the development of the property was retarded by the failure of McConaghy to build, to the extent of that amount of money. He also testified that there was another item of $797.26, actual cash paid out for street improvements, which he thought should be recovered back. Mr. Pemberton was also cross-examined at great length.

" Then Mr. Frank Mauran, one of the defendants, was examined. His attention was called to the clause in the agreement: 'Houses to be built on Clifford street lots by the party of the second part within one year,' and he also stated that Mr. McConaghy had not complied with that stipulation in the agreement; that he broke ground on April 14, 1892. Mr. Mauran testified further that McConaghy's attention was called, before the agreement was executed, to the stipulation that houses were to be built within one year; and after that the agreement was executed his attention was called to it.

" Then the testimony of quite a number of experts was taken as to the effect of building or not building houses in a neighborhood. The plaintiff was heard in rebuttal of some of the points testified to by the defendants, and expert witnesses were called on behalf of the plaintiff, who expressed opinions differing from those of the experts for the defendants.

" This is a brief view of the case as presented before the referee.

" Notwithstanding the amount of testimony taken the questions in the case narrow themselves down to two.

" It is undoubted that the plaintiff is entitled to recover the amount expended for street improvements, unless there was a breach of a covenant by the plaintiff and damages flowed from the breach of the plaintiff's covenant.   These damages, the defendants claim, exceeded in amount the value of the street improvements paid for by the plaintiff, and the defendants claim that they have a right to set off these damages in this case and to have a certificate for an amount in excess of the plaintiff's claim for nearly $10,000, or, to speak exactly, $9,471.29; and it seems equally clear to the referee that the plaintiff may have been excused for his breach of covenant by the breach on the part of the defendants of a mutual and dependent covenant.

" Let us examine the contention of the defendants.   The agreement between the parties was executed by mutual conveyances.   The lots owned by Messrs. Pemberton & Co. were conveyed to McConaghy, subject to certain building restrictions which do not appear in the agreement of sale, and which do not affect that agreement.   And McConaghy conveyed the real estate he had agreed to convey, subject to certain liens, which were known to Pemberton & Co.   The putting in, by the parties of the first part, of the street improvements, which it was known to the parties would amount to a considerable sum, was part of the consideration moving from Pemberton & Co. to McConaghy, to induce the trade or barter of houses for their land, and the building of houses within one year by McConaghy on the Clifford street lots seems to have been also part of the consideration moving to Pemberton & Co. from McConaghy for the exchange by Pemberton & Co. of land for the houses of McConaghy.   And to a certain extent they were mutual and dependent covenants.

" McConaghy, the plaintiff, did not deny that there was a specific covenant on his part to build houses within one year, and that that covenant had been broken, but he alleged, as an excuse, that the street improvements—that is, the street paving—were not completed until about September, 1891, and that he was, therefore, excused for non-compliance with his covenant to build houses within a year, for, as he had paid,

by way of exchange or barter of houses, for all the street improvements, he was entitled to wait until they were completed before he began to build the houses.

" This seems to the referee a reasonable view to take of this matter, and that Messrs. Pemberton & Co. cannot take advantage of the failure of McConaghy to build houses within one year, while they themselves were behindhand, or in fault, in regard to the street improvements.   It may be that this was a matter not entirely within their own control, but it certainly was a matter of great importance to McConaghy that the street improvements should either have been put in or have been in a fair way to be finished by the time his houses were finished ; otherwise he might have houses on his hands which he could not sell or rent, property without any pavement or roadway not being desirable.   The opinion of the referee is, therefore, that these two conditions or covenants were mutual and dependent one upon the other, but that the plaintiff, McConaghy, is excused for his non-performance of his covenant to build houses within one year by the failure of Messrs. Pemberton & Co. to put in the street improvements.   After the street improvements were finished, although they were not paid for as agreed by the defendants, Messrs. Pemberton & Co., McConaghy went on with reasonable promptness to build houses, and houses have been built by him upon the lots in question.

" The referee is of the opinion, and so reports, therefore, that in the view of the case that the covenant on the part of Pemberton & Co. that the sewer, gas, water, curb, and street pavements would be put in by them on front and rear and side streets, and the covenant on the part of McConaghy that houses were to be built on Clifford street lots by McConaghy within one year, were mutually dependent upon each other, McConaghy was excused for non-compliance with his agreement to build houses in the time specified, because Pemberton & Co. had failed to carry out their agreement to put in street improvements within that time.

" And the decision of the referee is that the plea of the defendants is not sustained, and he, therefore, gives judgment for the plaintiff.

" There is another view of the case, however, and one on which the greatest reliance was placed by the counsel for the

plaintiff.   That is, that regarding the covenant to build houses within one year by McConaghy as a binding covenant on him, and admitting that there had been a breach of that covenant, and that damages might be recovered for that breach if any actual damages were proved, no sufficient testimony had been brought before the referee from which he could find that the defendants, Pemberton & Co., had suffered any loss from the failure of McConaghy to build houses within one year.

" However reluctant the referee might be to decide the case upon such a theory, if the equity were on the side of the defendants, yet a careful examination of the agreement itself, and of the testimony given on behalf of the defendants, and of the rules of law and adjudicated cases, he is of opinion that no damages have been proved to have flowed from the breach of this covenant, except those speculative and remote in their character.   The contention of Messrs. Pemberton & Co. is, that houses were to have been built and finished on all the lots within one year, or at least this is the result of the propositions advanced by their learned counsel for them, for it was contended that if houses had been built on these lots, the neighborhood would have been improved and Messrs. Pemberton & Co. would have been enabled to sell their other houses at good prices, but as the lots remained vacant they could not sell the houses at any price.   But this view requires us to read into the covenant words which are not there.   Certainly, Mr. McConaghy would have complied with the letter and spirit of his agreement if he had commenced the building of two or three houses.   He had not agreed to build all the houses within one year; the simple agreement was that houses were to be built within one year; and even the opinions of the experts have hardly gone so far as to contend that the erection of two or three houses would have affected the sale of a number of other houses in the neighborhood in a dull and off year for building operations, as this year was testified to have been ; nor does the referee think, with all respect to the opinions of the defendants themselves and all the experts who have been called, that any damages have been satisfactorily proved to have resulted from the failure on the part of McConaghy to build houses within one year.

" The plaintiff requested the referee to rule that the defendants had made out no legal and valid defense, and that judg-

ment must, therefore, be entered for the plaintiff for the full amount claimed. And this point on behalf of the plaintiff is sustained.

"Both the plaintiff and defendants submitted briefs of authorities to the referee, and the cases have been examined by the referee, but he is of opinion that the decision of the present cause must depend more upon the construction of the agreement which was in evidence before him, and the facts proven before him, than upon the citation from cases where the exact point has not arisen.

"A few of the cases directly in point, and referred to by counsel, are, however, respectfully called to the attention of the court as having guided the referee in reaching his decision. They are Byrne v. Stewart, 23 W. N. C. 363, where it was held that 'an over-estimate by a vendor of the value of an article which he sells does not create a cause of action against him, nor is it a defense to a suit for the price agreed to be paid,' the view of the Supreme Court in that case being that where the vendee has an equal opportunity with the vendor to look into the matter and form an opinion as to the value, evidence should not be admitted as to what the actual value was, although if there were any facts within the knowledge of the vendor which have been concealed the rule is varied. Representations made by the vendor to the vendee which were false, and which induced him to buy the property, would be a partial defense to an action for the value of the property, and might be evidence as to the value.

"Upon the point that speculative damages cannot be recovered or set off: Bank v. McKee, 2 Pa. 318 ; Sitgreaves v. Griffith et al., 2 W. N. C. 705 ; Sloan v. Chamberlain, 7 W. N. C. 536 ; Van Kleck v. Pickering et al., 11 W. N. C. 238, were cited and relied on.

"Upon the point that the defendants are bound to show actual absolute loss occasioned by the failure to build within a time certain, 1 Sedgwick on Damages, 245, 246 ; Adams Expr. Co. v. Egbert, 36 Pa. 360 ; Fleming v. Beck, 48 Pa. 309 ; Griffin v. Colver, 16 N. Y. 489, were relied on.

"Upon the points that damages must not be speculative ; that profits are only recoverable when they are reduced to a certainty, and that the opinions of witnesses, whether expert or

not, are not to be received as to the amount of damages, the following cases were cited: Imp. Coal Co. v. Pt. Royal Coal Co., 138 Pa. 45; Duffield v. Rosenzweig, 144 Pa. 520, 537, also 150 Pa. 543; Bank v. McKee, 2 Pa. 318; Mitchell v. Allison, 29 Ind. 43; Bissell v. Wert, 35 Ind. 55; Schemerhorn v. Tyler, 11 Hun, 551; Cook v. Brockway, 21 Barb. 331; Willcox v. Leake, 11 La. Ann. 178; City v. McMillen, 49 Ind. 493; Van Deusen v. Young, 29 N. Y. 9; Robinson v. Kinne, 1 Thompson & Cook (N. Y.), 60; McGean v. Railroad, 117 N. Y. 219; Avery v. Railroad, 121 N. Y. 31; Atkins v. Railroad, 10 N. Y. Supp. 432; Gilbert v. Cherry, 57 Ga. 128; Railroad v. Varner, 19 Ala. 185: Norman v. Wells, 17 Wend. 137; Lincoln v. Railroad, 23 Wend. 425; Brown v. Railroad, 12 R. I. 238.

"The defendants' counsel cited in support of a proposition that, as the parties had in contemplation at the time the agreement was made the benefits to accrue to the defendants by the building of the houses by the plaintiff within a certain time, the damages arising from the breach were not too remote: 6 Am. & Eng. Ency. of Law, page 5; Fleming v. Beck, 48 Pa. 309; Coal Co. v. Foster, 59 Pa. 365; Rogers v. Bemus, 69 Pa. 432.

"In Fleming v. Beck, Judge AGNEW, in delivering the opinion of the court, said: 'There is no error in the charge that loss of profits, as consequential damages, could not be recovered,' and after stating the facts of the particular case before him, he goes on as follows: 'Mr. Sedgwick, in his work on Damages, page 78, says: " Both the English and American courts have generally adhered to the denial of profits as any part of the damages to be compensated, and that whether in cases of contract or tort." He further says: " Independent, however of all authority, I am satisfied upon principle that an allowance of damages upon the basis of a calculation of profits is inadmissible. The rule would be in the highest degree unfavorable to the interests of the community," the reasoning for which he then proceeds to give. The same doctrine is stated in 2 Parsons on Contracts, 458, 459. I think the rule in such cases is well stated in the case of Hadley v. Baxendale, 9 Exch. Rep. (26 Eng. L. & E. 398). There ALDERSON, B., says: " Now we think the proper rule in such a case as the present is this: Where two parties have made a contract, which one of them has broken, the damages which the other party ought to receive, in respect

to such breach of contract, should be such as may fairly and reasonably be considered either arising naturally, i. e., according to the usual course of things from such breach of the contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties at the time they made the contract, as the probable result of the breach of it." '

" The inference of the defendants' counsel from this rule that Mr. McConaghy could fairly be inferred to have had in his mind at the time he made the contract that if he did not build houses within a year he would be chargeable with a large part of the cost of carrying Messrs. Pemberton & Co.'s building operation is hardly reasonable.

" In the case of the Pittsburg Coal Co. v. Foster et al., 59 Pa. 365, the plaintiff contracted to furnish the defendant, on the 1st of February, an engine to draw coal cars on a track of unusual width; the engine was not delivered until May; the defendant gave evidence that an engine for such track could not be hired, and that he had to transport his coal by horses. In that case it was held that evidence of the difference of cost of transportation between horse power and by the engine during the delay on the part of the defendant was admissible on the question of damages. Judge Agnew, delivering the opinion of the court, says : ' The true inquiry which arose under these circumstances, was whether the damages thus claimed were the necessary consequence of the failure to perform the contract in time, and whether they were presumptively in the view of the plaintiffs at the time of making their contract to finish and deliver the engine in running order on the defendant's track by the 1st of February. The damages ordinarily recoverable are those necessarily following the breach, which the party guilty of the breach must be presumed to know would be the probable consequence of his failure. The rule is well expressed by Strong, J., in Adams Exp. Co. v. Egbert, 12 Casey, 364. They must be a proximate consequence of the breach, not merely remote or possible. There is no measure for losses of the latter kind.' And after discussing the rule at considerable length, he says that the loss in the case before him was immediate, and the necessary consequence of nonfulfillment.

" The referee in the present case is unable to reach the conclusion that such damages as were attempted to be proved

before him were even presumptively in the mind of Mr. Mc-
Conaghy at the time he made his agreement with Pemberton
& Co.

"In the case of Rogers v. Bemus, 69 Pa. 432, cited on behalf
of the defendants, AGNEW, J., delivering the opinion of the
court, while he reversed the court below for excluding evidence
of what a mill would fairly have rented for, which the defend-
ants, by their breach of contract to lay foundations had delayed
the plaintiffs from operating, restricted the testimony as to dam-
ages to that which was the direct result of the neglect and
refusal of the defendant to perform his covenant."

Exceptions to referee's report were dismissed by the court.

*Error assigned* was dismissing exceptions to referee's report.

*Pierce Archer, Elias P. Smithers* with him, for appellants.—
The covenant to build within one year, and the covenant to
pave and curb the highways, were mutual and dependent cov-
enants.  The building was to precede the paving.  Time was
there of the essence of the contract, and made so by the par-
ties ; while as to the paving, it being a matter subsequent to
the building, it was not a condition precedent to McConaghy's
performance of the whole of his contract before Pemberton's
duty began : Thorpe v. Thorpe, Lord Raymond, 662; Wilks
v. Smith, 10 M. & W. 355; Mattock v. Kinglake, 10 Ad. &
E. 50; Baily v. Clay, 4 Rand. (Va.) 346; Cunningham v.
Morrell, 10 Johns. (N. Y.) 204; Shinn v. Bodine, 60 Pa. 182;
Schilling v. Durst, 42 Pa. 126.

Plaintiff's covenant to build houses on the lots within one
year was a condition precedent to the defendant's undertaking
to put in street improvements, and the plaintiff having broken
his covenant cannot now recover for a breach of theirs by
the defendants: Benninger v. Hankee, 61 Pa. 343; Parshall's
App., 65 Pa. 224; Cleveland v. Sterrett, 70 Pa. 204; Carter v.
Phillips, 144 Mass. 100; Wilson v. Roots, 119 Ill. 379; Cin-
cinnati etc. R. R. v. Bensley, 6 U. S. App. 115.

*John G. Johnson* and *Lucius S. Landreth, Francis A. Lewis*
with them, for appellee.—The covenant by the appellants to
do the street paving and curbing, and that by the appellee to

erect buildings, were separate and independent: Anson on Contracts, 2d ed. 379; Mill Dam Foundry Co. v. Hovey, 21 Pick. 417; Long v. Caffrey, 93 Pa. 526; Obermyer v. Nichols, 6 Binn. 159; Quinlan v. Davis, 6 Whart. 169; Fame Ins. Co.'s App., 83 Pa. 396; Brown v. Foster, 51 Pa. 165.

The appellee was not obliged to erect buildings until after the street paving and curbing had been done by the appellants.

Even though there had been an unjustifiable failure by the appellee to build within one year, he was responsible to the appellants by reason thereof only for such damages as wholly resulted therefrom.

There was a failure by the appellant to establish, by legal proof, the fact that they had sustained any damages: Hutchinson v. Snider, 137 Pa. 1; 1 Sedgwick on Damages, secs. 177, 256; Duffield v. Rosenzweig, 144 Pa. 520.

PER CURIAM, May 13, 1895:

The very able argument of the learned counsel for the appellants has failed to convince us of any error in the report of the referee. His report is so well sustained by the treatment he has given of the questions at issue that after a most patient and attentive reading of it in connection with the arguments of counsel, we have reached the conclusion to affirm the judgment upon the findings and conclusions contained in the report.

Judgment affirmed.